# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

————————————————————————————X

XIAMIN ZENG,

        Plaintiff,

-against-

DANA AUGUSTIN, PAULA PARKS,
and KRISTEN HARTMAN,

        Defendants.

————————————————————————————X

Case No.:
17-cv-9988 (JMF)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/10/18

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

Filed by:

Xiamin Zeng, Plaintiff *pro se*
110 Columbia Street, Apt. 1A
New York, NY 10002
Phone: (202) 681-9522

Date: September 10, 2018

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES      4

PRELIMINARY STATEMENT      10

ARGUMENT      12

POINT I
PLAINTIFF STATES A CLAIM FOR THE
VIOLATION OF HER CONSTITUTIONAL RIGHTS      12

     A. Plaintiff Has Asserted a Violation of Her
         Right to Substantive Due Process Due
         to Defendants' Interference with Her
         Her Parental Rights      15

     B. Plaintiff Has Asserted a Violation of a
         Liberty Interest in Her Rights in
         Connection with Her Child      21

POINT II
PLAINTIFF'S CLAIMS ARE NOT PRECLUDED
BY PRIOR OR CURRENT LITIGATION      23

     A. Plaintiff's Claims Could Not Be
         Addressed in State Court      24

     B. Plaintiff's Claims Are Unrelated to
         Domestic Issues      27

     C. The *Rooker-Feldman* Doctrine Is
         Inapplicable      28

POINT III
DEFENDANTS ARE NOT IMMUNE FROM SUIT      31

A. Defendants Are Not Entitled to Qualified
   Immunity                                          32

B. Defendant Hartman Is Not Entitled to
   Quasi-Judicial Immunity                           34

POINT IV
PLAINTIFF'S CLAIM FOR INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS
IS NOT SUBJECT TO DISMISSAL                           41

CONCLUSION                                            42

AFFIDAVIT OF SERVICE                                  43

# TABLE OF AUTHORITIES

## Cases

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct.
1598, 26 L. Ed. 2d 142 (1970) — 40

*Alltrade, Inc. v. Uniweld Prods.*, 946 F.2d
622 (9th Cir., 1991) — 26-27

*Ankenbrandt v. Richards*, 504 U.S. 689 (1992) — 27

*Anthony v. City of New York*, 339 F.3d 129
(2nd Cir., 2003) — 16-17

*Baca v. Moreno Valley Unified School District*,
936 F. Supp. 719 (C.D. Cal., 1996) — 21

*Barnes v. County of Placer*, 386 Fed. Appx. 633
(9th Cir., 2010) — 34

*Brittain v. Hansen*, 451 F.3d 982 (9th Cir., 2006) — 19

*Brody v. Village of Port Chester*,
345 F.3d 103 (2nd Cir., 2003) — 15

*Brown v. Costello*, 905 F. Supp. 65 (N.D.N.Y., 1995) — 36

*Bukovinsky v. Sullivan County Div. of
Health & Family Servs.*, 408 Fed. Appx. 406
(2nd Cir., 2010) — 16

*Ciambriello v. Cty. of Nassau*, 292 F.3d
307 (2nd Cir., 2002) — 40

*Collins v. Womancare*, 878 F.2d 1145
(9th Cir., 1989) — 40

Page

*Cohen v. Lupo*, 927 F.2d 363 (9th Cir., 1991)                                          31

*Coverdell v. Dept. of Social and Health Services,*
*State of Washington*, 834 F.2d 758
(9th Cir., 1987)                                                                        37

*Cox v. Warwick Valley Cent. School Dist.,*
654 F.3d 267 (2nd Cir., 2011)                                                        17, 20

*Crowe v. County of San Diego*, 608 F.3d 406
(9th Cir., 2010)                                                                     21-22

*Cruz v. Bodek*, 1997 U.S. Dist. LEXIS 1331,
p. 7 (S.D.N.Y., 1997)                                                                   38

*DeBiaso v. Spitz*, 957 F. Supp. 2d 1213
(D. Or., 2013)                                                                          20

*Dennis v. Sparks*, 449 U.S. 24, 101 S. Ct. 183,
66 L. Ed. 2d 185 (1980)                                                                 40

*Exxon Mobile Corp. v. Saudi Basic Industries*
*Corp.*, 544 U.S. 280 (2005)                                                            29

*Gini v. Las Vegas Metropolitan Police Dept.,*
40 F.3d 1041 (9th Cir., 1994)                                                        20-21

*Hachamovitch v. DeBuono*, 159 F.3d 687
(2nd Cir., 1998)                                                                        29

*Haring v. Prosise*, 462 U.S. 306, 103 S. Ct. 2368,
76 L. Ed. 2d. 595 (1983)                                                             30-31

*Headley v. Bacon*, 828 F.2d 1272 (8th Cir., 1982)                                      31

*Hernandez v. Foster*, 657 F.3d 463 (7th Cir., 2011)                                    32

*Hill v. City of New York*, 45 F.3d 653
(2nd Cir., 1995) — 37

*Hirschfeld v. Spanakos*, 909 F. Supp. 174
(S.D.N.Y., 1995) — 32

*James v. Rowlands*, 606 F.3d 646 (9th Cir., 2010) — 18

*Johnson v. Newburgh Enlarged School Dist.*,
239 F.3d 246 (2nd Cir., 2001) — 33

*Kampfer v. Scullin*, 989 F. Supp. 194
(N.D.N.Y., 1997) — 39

*Lee v. City of Los Angeles*, 250 F.3d 668
(9th Cir., 2001) — 22

*Ljutica v. Holder*, 588 F.3d 119 (2nd Cir., 2009) — 26

*Marsh v. County of San Diego*, 680 F.3d 1148
(9th Cir., 2012) — 19

*Marshall v. Marshall*, 547 U.S. 293 (2006) — 28

*Martinez v. Mafchir*, 35 F.3d 1486 (10th Cir., 1994) — 18

*Marvel Characters v. Simon*, 310 F.3d 280
(2nd Cir., 2002) — 26

*McCaul v. Ardsley Union Free School Dist.*,
514 Fed. Appx. 1 (2nd Cir., 2013)
(unpublished) — 15 n.2

*McGarr v. City of Peekskill*, 975 F. Supp. 2d 377
(S.D.N.Y., 2013) — 19

*Miller v. O'Bryan*, 498 F. Supp. 2d 548
(N.D.N.Y., 2007) — 30

*Mortimer v. City of New York*, 2018
U.S. Dist. LEXIS 53492, p. 79 (S.D.N.Y., 2018)　　41-42

*Mosher-Simons v. County of Allegany*,
99 N.Y.2d 214 753 N.Y.S.2d 444, 783
N.E.2d 509 (2002)　　37-38

*Mulholland v. Government County of Berks*,
706 F.3d 227 (3rd Cir., 2013)　　17-18

*Myers v. Morris*, 810 F.3d 1437 (8th Cir., 1987)　　32

*New York Youth Club v. Town of Smithtown*,
867 F. Supp. 2d 328 (E.D.N.Y., 2012)　　15 n.2, 16

*Partmar Corp. v. Paramount Pictures Theatres*,
347 U.S. 89, 74 S. Ct. 414, 98 L. Ed. 532 (1954)　　27

*Porter v. Osborn*, 546 F.3d 1131 (9th Cir., 2008)　　34

*Ram v. Lal*, 906 F. Supp. 2d 59
(E.D.N.Y., 2012)　　24-25

*R.B. v. Westmoreland County*, 526 Fed. Appx. 181
(3rd Cir., 2013)　　34

*Roe v. City & County of San Francisco*,
109 F.3d 578 (9th Cir., 1997)　　39

*Rymer v. Douglas County*, 764 F.2d 796
(11th Cir., 1985)　　16

*Sanford v. Stiles*, 456 F.3d 298 (3rd Cir., 2006)　　34

*Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct.
1388, 71 L. Ed. 2d 599 (1982)　　17

|  | Page |
|---|---|
| *Saucier v. Katz*, 533 U.S. 194 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) | 32 |
| *Shmueli v. City of New York*, 424 F.3d 231 (2nd Cir., 2005) | 39 |
| *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65 (2nd Cir., 2003) | 24 |
| *Starkey v. Boulder County Social Servs.*, 569 F.3d 1244 (10th Cir., 2009) | 18 |
| *Sullivan v. Syracuse Housing Authority*, 962 F.2d 1101 (2nd Cir., 1992) | 15 |
| *Swipies v. Kofka*, 419 F.3d 709 (8th Cir., 2005) | 19 |
| *Tenenbaum v. Williams*, 193 F.3d 581 (2nd Cir., 1999) | 22 |
| *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471 (2nd Cir., 2006) | 11 |
| *United States v. Myers*, 426 F.3d 117 (2nd Cir., 2005) | 18-19 |
| *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir., 1989), *cert. denied*, 110 S. Ct. 51, 107 L. Ed. 2d 20 (1989) | 40 |
| *Valley v. Rapides Parish School Board*, 118 F.3d 1047 (5th Cir., 1997) | 39 |
| *Whitney Holdings v. Givotovsky*, 988 F. Supp. 732 (S.D.N.Y., 1997) | 26 |
| *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89 (2nd Cir., 1999) | 16 |

|  | Page |
|---|---|
| *Ziccardi v. City of Philadelphia*, 288 F.3d 57 (3rd Cir., 2002) | 18 |

Statutes

| 42 U.S.C. § 1983 | 20, 21, 40 |
|---|---|
| 42 U.S.C. § 1985 | 20 |
| 42 U.S.C. § 1986 | 20 |
| U.S. Constitution, 14th Amendment | 18, 19 |

Rules

| Fed. R. Civ. P. 12 | 10 |
|---|---|

Other

| Bradley G. Silverman, "Federal Questions and the Domestic-Relations Exception," *Yale Law Journal* 125:5, March 2016 | 28 |
|---|---|

# PRELIMINARY STATEMENT

Two separate motions to dismiss have been filed in this matter: one by Defendants Dana Augustin and Paula Parks, both of whom are employees of New York City's Administration for Children's Services (hereafter, the "ACS Defendants"), pursuant to Fed. R. Civ. P. 12(b)(6); a second by Defendant Kristen Hartman pursuant to Fed. R. Civ. P. 12(c). Plaintiff -- the mother of the small child whose alleged mistreatment is at the heart of this matter -- will respond herein to the arguments contained in both motions.

Defendants' misleading and premature arguments either misstate the facts of this case or ignore relevant precedent. Contrary to Defendants' claims, Plaintiff's Amended Complaint sets forth serious violations by Defendants of her substantive due process and liberty interest in the care, welfare and protection of her minor child. Defendants misstate the applicable standards for immunity from her claims for compensation, and completely ignore the fact that Plaintiff's non-monetary claims are not subject to any immunity whatsoever. They further misstate the law of claim preclusion, urging the Court to refuse to resolve federal and constitutional claims that, in fact, can be resolved only in a federal forum. In a word, Defendants are attempting to escape this Court's consideration of their serious violations of constitutional rights, as properly asserted in Plaintiff's

self-drafted Amended Complaint. This Court should reject this attempt to undermine its authority in this matter.

Defendants themselves concede that they bear a heavy burden in attempting to foreclose Plaintiff's right to a trial of these grave questions. The allegations in the Amended Complaint, at this stage of the litigation, must be assumed true -- a fact acknowledged by Defendants. (ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 12.) Indeed, Defendants' burden is particularly heavy because Plaintiff is a *pro se* litigant who drafted her own Amended Complaint; Defendants acknowledge that "the submissions of the plaintiff *pro se* 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" (Hartman's Memorandum of Law, Dkt. No. 34, p. 16); *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2nd Cir., 2006).

Defendants have not met this burden. Based on her allegations, it is undeniable that Plaintiff asserts serious civil rights claims arising out of conduct[1] which deserves this Court's review. At this stage, Plaintiff only

---

[1] Defendants concede that Plaintiff has asserted at least the following: Defendant Hartman, while supposedly supervising the minor child's visit with his father, failed to protect him from the father's harmful actions (Hartman's Memorandum of Law, Dkt. No. 34, p. 7); Defendant Hartman then wrongly described the incident to Family Court, thus covering up her misconduct and exposing the minor child to continuing danger (*Id.*); the ACS Defendants threatened to wrongfully issue "negative reports about her" that would undermine her relationship with her child (ACS Defendants' Memorandum of Law, Dkt. No. 28, pp. 9, 12); the ACS Defendants "interfered in ongoing police and Family Court

seeks a chance to prove these serious claims in an impartial court of law. Thus, so long as Plaintiff can establish any basis in law on which relief could possibly be granted under the facts alleged, Defendants' motions must be denied. This fact alone militates strongly against Defendants' motions. Given Defendants' manifestly perfunctory and legally groundless arguments in support of their motions, Plaintiff respectfully asserts that the motions should be rejected and Plaintiff given an opportunity to advance their civil rights claims.

Plaintiff represents herself herein, but has obtained legal advice in this matter.

## ARGUMENT.

## POINT I

## PLAINTIFF STATES A CLAIM FOR THE VIOLATION OF HER CONSTITUTIONAL RIGHTS

Defendants' arguments are as striking for what they admit as for they ignore. According to Defendants themselves, Plaintiff alleges a starkly disturbing incident in which Defendant Hartman, who was supposed to be

---

proceedings" that were vital to protect Plaintiff's child (*Id.*, p. 9); ACS Defendants also attempted to undermine Plaintiff's legal efforts to secure protection for her minor child by threatening to challenge Plaintiff's child support if she did not desist (ACS Defendants' Memorandum of Law, p. 11); Plaintiff's child was, in fact, assaulted by his father during a supervised visit in which the ACS representatives took no action to protect the child (*Id.*); and Plaintiff's meritorious concerns about her child were dismissed following Defendants' actions (ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 12).

supervising a visit between Plaintiff's minor son ("L.L.") and his father on December 23, 2016, "departed the visitation room...and 'after 20 minutes' her infant son was 'brought of [sic] the room crying and vomiting.'" (Hartman's Memorandum of Law, Dkt. No. 34, p. 9; ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 10.) Not only did Defendant Hartman neglect her duties as a visitation supervisor and subject the minor child to danger, she then issued a written report about the incident that concealed her misconduct and denied that the child had been exposed to any harmful behavior. (Hartman's Memorandum of Law, Dkt. No. 34, p. 11; ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 10.)

Although Plaintiff promptly reported the incident to the "NYS Child Abuse Hotline" after taking her son to the emergency room of a hospital, Plaintiff alleges (as, again, Defendants admit) that Defendants promptly and collusively moved to avert an investigation into what had happened. Toward that end, they instead tried to pin the blame on Plaintiff, whose "behavior," Defendant Hartman claimed, somehow "indicates that she is not supportive of visitation." Defendants concede that Hartman "relayed this information to ACS a few days after the visit." In fact, Hartman had stated as much in writing. (ACS Defendants' Memorandum of Law, Dkt. No. 28, pp. 10-11.)

Defendants then proceeded to turn the evidence of possible harm to the child -- caused by his father during what should have been a supervised visit -- on its head. Armed with Hartman's deceptive and hostile report, the ACS Defendants confronted Plaintiff and began to pressure her for information that might be used to against her, while "threaten[ing] to interfere with Plaintiff's child support case 'if she continued to pursue the Dec. 23rd issue.'" (ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 11.) Plaintiff specifically alleges that one of the two ACS Defendants (Augustin) "threatened Plaintiff that she would write a bad report to the [Family Court] judge concerning the December 23 incident." Defendants concede this much as well. (ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 12.)

Continuing their perverse approach to the disturbing -- and, at this stage, admitted -- facts of the case, Defendants, in their motions to dismiss, deny that Plaintiff has even alleged a cause of action. Defendants are sorely mistaken. In fact, to reveal the falsity of Defendants' arguments it is only necessary to review the basic law in connection with the claims actually asserted in the Amended Complaint in this matter.[2]

---

[2] As the above summary of what Defendants themselves concede makes clear, Plaintiff's Amended Complaint contains more than adequate detail at this early stage of the litigation. "To survive a motion to dismiss, a complaint must contain sufficient factual

## A. Plaintiff Has Asserted a Violation of Her Right to Substantive Due Process Due to Defendants' Interference with Her Parental Rights

"In order to meet the minimum constitutional requirements for standing, a plaintiff must allege an 'actual or threatened injury' to himself that is 'fairly traceable' to the allegedly unlawful conduct of the defendant and is 'likely to be redressed by the requested relief.'" *Brody v. Village of Port Chester*, 345 F.3d 103, 108 (2nd Cir., 2003), *citing Sullivan v. Syracuse Housing Authority*, 962 F.2d 1101, 1106 (2nd Cir., 1992).

Plaintiff clearly alleges such damage by Defendants, and properly seeks several forms of appropriate relief: 1) compensatory damages; 2) punitive damages for Defendants' "willful and wanton behavior"; and 3) declaratory judgments that Defendants' behavior violated federal (and constitutional) law and constituted an intentional infliction of emotional distress. (Amended Complaint, Dkt. No. 5, p. 5.)

Specifically, Plaintiff asserts that Defendants' manifest interference in her care and protection of her minor child establishes a legally cognizable action for deprivation of substantive due process. The law clearly supports her position. A claim for a violation of substantive due process involves two

---

matter, accepted as true, to state a claim to relief that is plausible on its face." *McCaul v. Ardsley Union Free School Dist.*, 514 Fed. Appx. 1, 2 (2nd Cir., 2013) (unpublished; see Fed. R. App. P. 32.1(a)); *New York Youth Club v. Town of Smithtown*, 867 F. Supp. 2d 328, 333 (E.D.N.Y., 2012). Defendants' own recital of the alleged facts shows that Plaintiff has met this standard.

steps: 1) there must have been a deprivation of a federal constitutionally protected interest; 2) the deprivation must have resulted from an abuse of government power sufficient to raise an "ordinary tort" to the level of a constitutional violation. *Rymer v. Douglas County*, 764 F.2d 796 (11th Cir., 1985). The allegations conceded by Defendants themselves include "an abuse of government power"; indeed, Plaintiff alleges a shocking pattern by which government power was used as a tool for retaliation, parental alienation and child endangerment. As the Second Circuit Court of Appeals has noted, a child services worker's investigation into alleged child abuse only "passes constitutional muster" when "[the] case worker [has] a 'reasonable basis' for [his or her] findings of abuse." *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 104 (2nd Cir., 1999). In this case, Plaintiff alleges that the Defendants had a more than reasonable basis to complete a valid investigation of the accusation against Liu, but that they elected instead to concoct a case against *her*, for which there was no basis whatsoever. This is precisely the sort of misconduct that constitutes a violation of substantive due process rights. "[I]n order to rise to the level of a Due Process violation, a case worker's actions must be "'shocking, arbitrary, and egregious.'" *Bukovinsky v. Sullivan County Div. of Health & Family Servs.*, 408 Fed. Appx. 406, 407 (2nd Cir., 2010), *quoting Anthony v. City of*

*New York*, 339 F.3d 129, 143 (2nd Cir., 2003). Plaintiff alleges just that; such allegations, even without more, meet the relevant standard for a substantive due process violation.

Ignoring black-letter law, Defendants claim that nothing short of the actual removal of a child from a parent's custody can establish a substantive due process violation. (ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 17; Hartman's Memorandum of Law, Dkt. No. 34, p. 25.) That is not the law. The interest of natural parents "in the *care*, custody, *and management of their child*" -- not only child custody -- is a "fundamental liberty interest protected by the *Fourteenth Amendment*." *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) [emphasis added]; *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 275 (2nd Cir., 2011).[3] Indeed, the Court of Appeals for the Third Circuit has held that a mere temporary separation of a child from her parent makes CPS officers liable for a substantive due process violation, when "a child welfare agency has 'consciously disregarded a great risk that there had been no abuse [by that

---

[3] Defendants actually cite this case. (ACS Defendants' Memorandum of Law, p. 17; Hartman's Memorandum of Law, Dkt. No. 34, p. 25.) However, they not only misname it (both Defendants refer to it as *Coz* instead of *Cox*) but, more significantly, manage to misstate its holding. The conduct complained of in *Cox* was merely "stressful or even infuriating"; it did not result in any actual threat to the child's well-being, nor did it involve interference with the child's relationship with the plaintiff. (654 F.3d at 275-76.) Plaintiff in this case alleges that the child was exposed to harm and that her relationship with the child was substantively affected by Defendants' false allegations against her.

parent].'" *Mulholland v. Government County of Berks*, 706 F.3d 227, 241 (3rd Cir., 2013), *quoting Ziccardi v. City of Philadelphia*, 288 F.3d 57, 66 (3rd Cir., 2002). This holding is unmistakably relevant to Plaintiff's claims in this case: despite at least "a great risk that there had been no abuse" committed by *her*, and a clearly established "great risk" that there *had* been abuse by the child's father, Defendants "consciously disregarded" the danger to the child and, by their actions, undermined Plaintiff's relationship with her young son.

Not even the actual separation of parent and child is needed to support a claim for a substantive due process violation. One Court of Appeals has held that merely "failing to notify a parent of a change in his child's physical custody meaningfully impairs his right to participate in the child's care and management," thus violating the parent's substantive due process rights under the Fourteenth Amendment. *James v. Rowlands*, 606 F.3d 646, 655 (9th Cir., 2010). Similarly, the mere "right of familial association [of plaintiffs, a mother and child]" -- again, much less than child custody -- has been held to be "included in the substantive due process right of freedom of intimate association...."). *Starkey v. Boulder County Social Servs.*, 569 F.3d 1244, 1253 (10th Cir., 2009), *quoting Martinez v. Mafchir*, 35 F.3d 1486, 1490 (10th Cir., 1994). *Accord, United States v. Myers*, 426 F.3d 117, 125

(2nd Cir., 2005) (a parent's interest in maintaining a relationship with his or her child is protected by the Due Process Clause of the Fourteenth Amendment); *New York Youth Club v. Town of Smithtown, supra*, 867 F. Supp. 2d at 337-38; *McGarr v. City of Peekskill*, 975 F. Supp. 2d 377, 389 (S.D.N.Y., 2013).

Indeed, the deprivation of child custody is so extraneous to a violation of substantive due process that even a non-custodial parent's right to *visitation* with the child is protected under precisely the same constitutional principles, so that its deprivation violates the same Fourteenth Amendment norms. *See Swipies v. Kofka*, 419 F.3d 709, 714 (8th Cir., 2005); *Brittain v. Hansen*, 451 F.3d 982, 992 (9th Cir., 2006). Similarly, the Ninth Circuit Court of Appeals has extended the Fourteenth Amendment's protection of "[a] parent's right to choose how to care for a child" to "decisions dealing with death, such as whether to have an autopsy, how to dispose of the remains, whether to have a memorial service and whether to publish an obituary" -- even when the child is no longer living. *Marsh v. County of San Diego*, 680 F.3d 1148, 1154 (9th Cir., 2012). Plaintiff's allegations in this case -- in which her child is very much alive, and faces a danger of abuse -- are obviously stronger than those held to be protected under the Fourteenth Amendment in *Marsh* and similar cases. No wonder Defendants avoid

discussing the relevant precedents, citing only *Cox v. Warwick Valley Central School Dist., supra,* a case (as shown above) they both misname and misread.

What is more, "a substantive due process violation can...arise in the context of a familial relationship claim where all procedural protections are provided." *DeBiaso v. Spitz,* 957 F. Supp. 2d 1213, 1220 (D. Or., 2013). Thus, it is irrelevant whether Defendants followed technically "correct" procedures while trampling Plaintiff's right to protect, manage and care for her small child. Their violation of basic constitutional guarantees is still properly set forth in the Amended Complaint. Plaintiff's allegations that Defendants colluded to conceal the danger faced by her minor child, to expose the child to still further harm, and to jeopardize her ability to care for the child by wrongfully making *her* the target of a wrongful investigation, clearly state valid legal claims and are not subject to dismissal.

Finally, Defendants appear to argue that they cannot be liable under 42 U.S.C. §§ 1983, 1985 or 1986 for violations of Plaintiff's substantive due process rights unless each Defendant is directly implicated in every detail of the Defendants' collusive conduct. (Hartman's Memorandum of Law, Dkt. No. 34, p. 32; ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 26.) Again, this is not the law. Under such cases as *Gini v. Las Vegas*

*Metropolitan Police Dept.*, 40 F.3d 1041, 1044 (9th Cir., 1994) and *Baca v. Moreno Valley Unified School District*, 936 F. Supp. 719, 733 (C.D. Cal., 1996), any state actor can be liable for civil rights violations when she knew or should have known that her actions would place a plaintiff's property interests at serious peril. In such a case, each Defendant's liability arises from the fact that she set in motion a series of acts by others which the actor knew or reasonably should have known would cause others to inflict the constitutional injury. That is precisely what Plaintiff alleges in this case.

Plaintiff is not legally required to detail each Defendant's role in each of the incidents constituting the collusive conduct. Plaintiff has clearly alleged more than enough to establish a violation by Defendants of her constitutional rights: she has asserted wrongful conduct on the part of each and every Defendant, and has alleged knowing collusion by Defendants in the violation of her substantive due process rights by means of this series of wrongful acts. Her claims are not subject to dismissal.

**B.   Plaintiff Has Asserted a Violation of a Liberty Interest in Her   Rights in Connection with Her Child**

In addition to her constitutional right to substantive due process under the Fourteenth Amendment, Plaintiff properly alleges a violation of her liberty interest in her relationship with her minor son under 42 U.S.C. § 1983. "[A] parent has a fundamental liberty interest in the companionship

and society of his or her child and that the state's interference with that liberty interest without due process of law is remediable under [*42 U.S.C. §*] *1983.*" *Crowe v. County of San Diego*, 608 F.3d 406, 441 (9th Cir., 2010),[4] *quoting Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir., 2001); *Tenenbaum v. Williams*, 193 F.3d 581, 592 (2nd Cir., 1999). In this case, Plaintiff alleges that the Defendants, by wrongfully accusing her of endangering her child's relationship with his father, have deliberately and wrongfully interfered in her right to "the companionship and society" of her minor child. Thus she properly asserts a claim for a violation of her protected liberty interest under the Fourteenth Amendment and 42 U.S.C. § 1983.

Defendants attempt to escape the import of the relevant cases by claiming that Plaintiff seeks "a right to be free from child abuse investigations." (ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 15; *see* Hartman's Memorandum of Law, Dkt. No. 34, p. 25.) No such "right" is claimed anywhere in the Amended Complaint, and Defendants do not point to single line in it to prove otherwise. On the contrary, it is Defendants who are attempting to fabricate a new "right": the right of state actors to deliberately expose a small child to harm, and to knowingly frame an

---

[4] This opinion was modified at 608 F.3d 406 (9th Cir., 2010); nothing relevant to the holding in question was affected thereby.

innocent parent of abusive conduct so as to conceal their own misconduct. Comment on such an argument would be superfluous.

In a word, Defendants' attempt to scuttle this case before the parties have even exchanged pretrial discovery materials is clearly premature and unfounded. What is more, to allow Defendants to paper over serious misconduct with such misleading technical allegations would add a miscarriage of justice to the already sadly mishandled evidence of child abuse in this matter. Plaintiff's assertion of violations by Defendants of her liberty and substantive due process rights should be allowed to proceed.

## POINT II

## PLAINTIFF'S CLAIMS ARE NOT PRECLUDED BY PRIOR OR CURRENT LITIGATION

Besides the baseless claims discussed above, Defendants argue that the federal claims advanced in this action either have been, or should have been, litigated in state court, where Plaintiff and her ex-partner are disputing such matters as child support, custody and visitation. (Hartman's Memorandum of Law, Dkt. No. 34, pp. 27-28, 29-30; ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 21.)

Defendants' arguments are misplaced. Jurisdiction clearly exists in this Court to resolve Plaintiff's Fourteenth Amendment claims -- nor are there any grounds for the Court to abstain from exercising jurisdiction.

Plaintiff's claims have not been and could not have been raised, let alone fully resolved, in state court litigation; even if they had been, their resolution would have been unnecessary to the matters to be decided there, so that no preclusive effect attaches to them; and there is no justification for applying the *Rooker-Feldman* doctrine to this matter, as Defendants urge.

## A.     Plaintiff's Claims Could Not Be Addressed in State Court

Defendants urge the Court to abstain from exercising jurisdiction under the *Younger* doctrine. (Hartman's Memorandum of Law, Dkt. No. 34, p. 29.) The law urges otherwise. Under the *Younger* doctrine, federal courts should abstain from taking jurisdiction over a matter when: "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2nd Cir., 2003).

In this case, it is undisputed that Plaintiff is involved in domestic litigation in a New York state court. However, in order for a *Younger* abstention to be appropriate, the plaintiff must have an "opportunity to raise and have timely decided by a competent state tribunal the constitutional claims at issue in the federal suit." *Spargo, supra,* 351 F.3d at 77. In particular, "[c]ourts are...hesitant to abstain when a party to the federal case

has not been named as a party to the state case and has had no opportunity to raise its claims before the state court." *Ram v. Lal*, 906 F. Supp. 2d 59, 73 (E.D.N.Y., 2012).

In this case, the Defendants are not parties to the state court litigation. Nor has Plaintiff has not been able to assert against them the constitutional claims maintained herein; indeed, Defendants do not claim that she has. They content themselves with roundabout suggestions that the constitutional claims asserted against Defendants before this Court amounts only to a "custody dispute" (Hartman's Memorandum of Law, Dkt. No. 34, p. 30) because the Amended Complaint "discusse[s] Family Court orders and determinations" (ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 21). Even a cursory reading of the Amended Complaint reveals this to be a flagrant falsehood.[5] The claims asserted against the Defendants are based on their knowing deprivation of Plaintiff's constitutional rights; these claims have not been raised, let alone resolved, in the domestic litigation below. Nor could they be. Federal abstention under *Younger* is clearly not appropriate.

---

[5] Defendants' claims are not even factually accurate. They refer to Exhibits "C" and "G" as "Family Court orders and petitions" from state court litigation in which "Plaintiff was involved." (ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 21.) Anyone who actually reads the Amended Complaint, and the relevant exhibits, can see that Exhibit "C" is a petition filed by the ex-wife of the child's father -- *not* by Plaintiff -- in 2010, and that Exhibit "G" is an order from the Supreme Court of New York (Queens County), not "Family Court."

This Court has held clearly that "an issue will not be precluded in a subsequent action unless (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceedings." *Whitney Holdings v. Givotovsky*, 988 F. Supp. 732, 737 (S.D.N.Y., 1997) [internal quotation marks deleted]. As a result, under applicable authority, "a prior judgment cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Marvel Characters v. Simon*, 310 F.3d 280, 287 (2nd Cir., 2002) [internal quotation marks deleted]; *Ljutica v. Holder*, 588 F.3d 119, 127 (2nd Cir., 2009). Since Plaintiff's federal claims could not have been resolved in her state court litigation against her ex-partner, no findings from that litigation can preclude the instant claims.

Even if such issues could have been raised and decided -- and they could not have been -- the decisions would not have preclusive effect on the instant federal litigation, since they could not have been material to the state court's decisions regarding child custody, child support and related issues. "Findings that are immaterial to a decision...are devoid of preclusive legal effect." *Alltrade, Inc. v. Uniweld Prods.*, 946 F.2d 622, 627 n. 10 (9th Cir.,

1991), *citing Partmar Corp. v. Paramount Pictures Theatres*, 347 U.S. 89, 99 n. 6, 74 S. Ct. 414, 98 L. Ed. 532 (1954). Defendants' objections to the litigation of these claims before the Court are utterly baseless.

## B.  Plaintiff's Claims Are Unrelated to Domestic Issues

Defendants also contend that the litigation of these constitutional claims would amount to "interference with a state court action involving child custody or matrimonial proceeding" because the Amended Complaint (incorrectly referred to as the "Complaint") "seeks to place this Honorable Court squarely within the ongoing determinations of just those issues. (Hartman's Memorandum of Law, Dkt. No. 34, p. 30.) Defendants' position is factually disingenuous and legally false.

As amply shown above -- and confirmed by even a cursory review of the Amended Complaint -- Plaintiff seeks remedies in this Court that have nothing to do with a change of child custody. Such relief is not barred by any abstention doctrine concerning "domestic relations" matters. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Plaintiff does not ask this Court for a modification of child custody. As noted above, she seeks: 1) compensatory damages; 2) punitive damages for Defendants' "willful and wanton behavior"; and 3) declaratory judgments regarding Defendants' actions. (Amended Complaint, Dkt. No. 5, p. 5.) Defendants' claim that such

relief would interfere with matrimonial litigation in state court is totally unfounded.

Indeed, the U.S. Supreme Court stated in 2006: "While recognizing the 'special proficiency developed by state tribunals...in handling issues that arise in the granting of [divorce, alimony, and child custody] decrees,' we viewed federal courts as equally equipped to deal with complaints alleging the commission of torts." *Marshall v. Marshall*, 547 U.S. 293, 308 (2006) [citation omitted]. Clearly this view applies, *a fortiori*, to questions involving federal civil rights claims, as in this action. *See also* Bradley G. Silverman, "Federal Questions and the Domestic-Relations Exception," *Yale Law Journal* 125:5, March 2016. In the instant matter, which clearly presents federal questions, there is no reason in law for the Court to abstain from resolving the case.

## C.   The *Rooker-Feldman* Doctrine Is Inapplicable

Defendants also claim that this action is precluded by the so-called *Rooker-Feldman* doctrine. (ACS Defendants' Memorandum of Law, Dkt. No. 28, pp. 20-21; Hartman's Memorandum of Law, Dkt. No. 34, pp. 26-27.) Defendants' argument overlooks important case law limiting the application of the doctrine and rests on a crucial misstatement of the facts of the case. Defendants' contention should be rejected out of hand.

"The *Rooker-Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2nd Cir., 1998). Yet, Defendants completely ignore the well-established limits of the doctrine to be found in applicable precedents. In *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the U.S. Supreme Court held that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced and inviting district court review and rejection of those judgments." *Exxon Mobile*, 544 U.S. at 284.

In this case, as detailed above, Plaintiff does not seek to relitigate any domestic matters before this Court. (Defendants themselves do not actually claim she does.) Indeed, Plaintiff cannot possibly be seeking relitigation of the key question at issue in the state court matter -- child custody -- because the state court *has not even rendered a final ruling on that question*. In the absence of such a ruling, *Rooker-Feldman* has no bearing whatsoever on this

matter, even as Defendants present the issue.[6] The entire question is a red herring.

To repeat the obvious: Plaintiff does not ask this Court to rule on domestic matters such as child custody. Rather, Plaintiff asserts federal civil rights claims arising out of collusion between state actors (who are not parties to the state court litigation) that occurred during the state court litigation. Federal jurisdiction is wholly appropriate in such a case.

Moreover, since the requirements for the *Rooker-Feldman* abstention closely parallel those for claim preclusion based on the doctrine of *res judicata*, it is fatal to Defendants' position that no final judgment, or similar dispositive finding, has been rendered with respect to any of the claims asserted in the Amended Complaint. *See Miller v. O'Bryan*, 498 F. Supp. 2d 548, 553 (N.D.N.Y., 2007), *citing Haring v. Prosise*, 462 U.S. 306, 315, 103 S. Ct. 2368, 2374, 76 L. Ed. 2d. 595 (1983) ("A plaintiff is not estopped from making a *§ 1983* claim for deprivation of rights unless the final verdict

---

[6] Defendants stray so far from the applicable law that they are propelled into self-contradictions. As noted above, to deny that Plaintiff has asserted a substantive due process claim, they insist that Plaintiff has never been deprived of child custody. (ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 17; Hartman's Memorandum of Law, Dkt. No. 34, p. 25.) But at the same time, to assert the application of the *Rooker-Feldman* abstention doctrine, they claim the exact opposite: that "the plaintiff lost, in child custody decisions." (Hartman's Memorandum of Law, Dkt. No. 34, p. 27; *see* ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 21.) Defendants cannot have it both ways. In fact, they are wrong on both points: as shown above, a substantive due process claim does not require the loss of child custody; and there is no allegation in this case that the child custody issue has been resolved in state court (let alone adversely to Plaintiff), disposing of the *Rooker-Feldman* issue even by Defendants' own reckoning.

was entered upon the determination of that particular issue"). No issue raised in this litigation has been the subject of a final judgment in an any other court.

Finally, to invoke *res judicata* in a later action, "both cases must have involved the same cause of action and the same parties." *Cohen v. Lupo*, 927 F.2d 363, 365 (9th Cir., 1991); *Headley v. Bacon*, 828 F.2d 1272, 1274 (8th Cir., 1982). The instant case clearly involves defendants and causes of action that have never been asserted in any prior litigation. Indeed, this is not even denied by Defendants. It is therefore clear that claim and issue preclusion are not available to Defendants; and it follows that *Rooker-Feldman* is equally inapplicable.

## POINT III

## DEFENDANTS ARE NOT IMMUNE FROM SUIT

Defendants claim to be immune from suit -- all of them under the doctrine of "qualified immunity," Defendant Hartman (who is not a judge) under a claim of "quasi-judicial immunity." (ACS Defendants' Memorandum of Law, Dkt. No. 28, pp. 22-25; Hartman's Memorandum of Law, Dkt. No. 34, pp. 17-23.) Once again, Defendants are wrong.

## A. Defendants Are Not Entitled To Qualified Immunity

The U.S. Supreme Court has mandated a two-step process for analyzing claims of qualified immunity, like the one Defendants assert in this case. First, the court must determine whether the facts alleged would establish a violation of a constitutional right. If so, the court must then determine if the asserted right was "clearly established" at the time the conduct took place. *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); *Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir., 2011). Plaintiff meets both prongs of this test.

That Plaintiff's right to the care, control and protection of her child is constitutionally protected, and is actionable under 42 U.S.C. § 1983, has been amply demonstrated above. Furthermore, the sacred bond between mother and child is a right both constitutionally protected and "clearly established" under existing law. *See Myers v. Morris*, 810 F.3d 1437, 1462-63 (8th Cir., 1987) (a parent's interest in maintaining the integrity of family unit is a clearly established right in the absence of reasonable suspicion).

Indeed, "the right that must be clearly established to defeat qualified immunity in a *Section 1983* case is a right guaranteed by the United States Constitution or federal law." *Hirschfeld v. Spanakos*, 909 F. Supp. 174, 179 (S.D.N.Y., 1995). It is beyond doubt that Plaintiff's right to protect and care

for her child -- the right Defendants allegedly violated in this case -- is "a right guaranteed by the United States Constitution." In fact, as shown above, federal courts have been affirming this for decades. Therefore, it is equally beyond doubt that the right is "clearly established." Defendants would virtually have had to be living on another planet to be unaware of it.

Defendants insist that they cannot be liable for performing "a discretionary task," and that this is what they were doing as caseworkers involved in Plaintiff's matrimonial litigation. (ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 22; *see* Hartman's Memorandum of Law, Dkt. No. 34, p. 21.) They thus ignore the authority of the Second Circuit Court of Appeals, which has ruled that "for claims based on intentionally tortious harmful conduct employed in the absence of any legitimate government interest, the requisite degree of particularity is lessened." *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 253 (2nd Cir., 2001).[7] This is precisely what Plaintiff alleges: she asserts that the Defendants, knowingly and maliciously, engaged in "intentionally tortious harmful conduct" which did not serve "any legitimate government interest." Accordingly, the specific facts alleged in the Amended Complaint

---

[7] Curiously, this is another case cited in memoranda of law filed by the two separate sets of Defendants (and drafted by different counsel), yet identically misspelled in both of them. (ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 22; Hartman's Memorandum of Law, Dkt. No. 34, p. 21.)

are surely sufficient to defeat a claim of qualified immunity at this stage, when all the allegations of the Amended Complaint must be accepted as true and liberally construed in Plaintiff's favor.

Moreover, the law is well established that state actors do not enjoy any immunity whatsoever for conduct that "shocks the conscience." *Barnes v. County of Placer*, 386 Fed. Appx. 633, 636 (9th Cir., 2010), *citing Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir., 2008). Indeed, "[i]n some contexts, deliberate indifference [by state actors] has been sufficient" to "shock the conscience," thus precluding such state actors as the Defendants herein from any claim of qualified immunity. *R.B. v. Westmoreland County*, 526 Fed. Appx. 181, 186 (3rd Cir., 2013), *citing Sanford v. Stiles*, 456 F.3d 298, 306-07 (3rd Cir., 2006). Plaintiff's allegations, when construed most liberally in her favor, as the law requires, certainly allege a travesty of justice that shocks the conscience, entailing as it does both deliberate child endangerment and parental alienation. Defendants have not met their burden for a claim of qualified immunity.

**B.    Defendant Hartman Is Not Entitled to Quasi-Judicial Immunity**

Defendant Hartman insists that she is immune from suit under the doctrine of quasi-judicial immunity, a theory she appears to extend to literally anyone who acts pursuant to a court order. (Hartman's

Memorandum of Law, Dkt. No. 34, pp. 17-20.)

There is such a doctrine; but it does not, as Defendant Hartman insists, shield her entirely from suit simply because she prepared a description of a supervised visit at the behest of a judge.

As Defendant Hartman herself concedes, quasi-judicial immunity extends only to non-judges "when their official duties have an integral relationship with the judicial process." (Hartman's Memorandum of Law, Dkt. No. 34, p. 18) [internal quotation marks deleted]. Nothing in the doctrine grants absolute immunity to a social worker for tasks that, though carried out under a judge's order, have nothing to do with the actions of a judge. It will be recalled that the court-ordered actions of Defendant Hartman in the relevant matter were two: she was ordered to supervise visits between the minor child L.L. and his father; and she was ordered to secure an evidentiary record of one such visit, the crucial one that occurred on December 23, 2016. Plaintiff alleges that Defendant Hartman deliberately violated both duties, first by leaving the room where the December 23 visit was taking place and allowing the child to be harmed, and then by covering up her misconduct by writing an inaccurate account of what occurred. (Amended Complaint, Dkt. No. 5, p. 6, paras. 1-5; p. 8, para. 17.)

Defendant Hartman's argument for quasi-judicial immunity, therefore,

reduces to two separate claims: 1) that supervising a visit and writing a report of that visit (for evidentiary purposes) are both *judicial* acts; and 2) even assuming, *arguendo*, that these *are* judicial acts, that they remain "integral" to "the judicial process" even when the supervisor *disobeys* both orders, failing to supervise and failing to accurately report what occurred. Both of Hartman's claims are patent nonsense.

"Courts that have addressed this issue have found that such an 'integral relationship' encompasses the activities of guardians ad litem, conservators, probation officers, and court appointed receivers." *Brown v. Costello*, 905 F. Supp. 65, 76 (N.D.N.Y., 1995). None of these categories applies even theoretically to Defendant Hartman, a social worker whose court-ordered duty was to supervise parental visits. Quasi-judicial immunity applies only to non-judges who carry out "functions closely tied to the judicial process." *See Hill v. City of New York*, 45 F.3d 653, 660 (2nd Cir., 1995). Even if Hartman had actually carried out the state court's orders -- and Plaintiff clearly alleges that she did not -- the supervision of a visit is not a "function closely tied to the judicial process." Neither is creating an evidentiary record of such a visit.

Indeed, on the rare occasions when a social worker has been held to be shielded by the doctrine of quasi-judicial immunity, the immunity arose

from a role very different from the visit supervision at stake in this case. For instance, the Ninth Circuit Court of Appeals held that a child protective services worker was entitled to absolute quasi-judicial immunity for seeking and executing a court order seizing a child. *Coverdell v. Dept. of Social and Health Services, State of Washington*, 834 F.2d 758, 763 (9th Cir., 1987). That is a far cry from the rule proposed by Defendant Hartman: namely, that anyone who does anything under court order is absolutely immune from liability when she 1) violates the order, and 2) lies about it afterward.[8] Such a rule would approach the legendary case of the defendant who murders both of his parents and then seeks the mercy of the court on the grounds that he is an orphan. The law is otherwise.

"Notably," New York's highest court has stated explicitly, "this extension of judicial immunity to those whose actions are an integral part of the judicial process is limited. It is circumscribed to claims arising from the performance of the specific judicially delegated function." The court stressed that a non-judicial party's report or evaluation can only qualify for quasi-judicial immunity when it is "an integral part of the judicial decision-making process." It is not sufficient that the report was produced as the result of a

---

[8] It is true that Defendants appear to dispute the accuracy of Plaintiff's description of the events of December 23 and of Hartman's report. But at this stage of the litigation such a dispute is meaningless, since the allegations contained in the Amended Complaint must be assumed to be true.

directive from the trial court. Only when the report functions as a portion of a judicial decision that could only have been made "by way of evaluations that would be impracticable for the court to perform itself" is the author of the report immune from liability. *Mosher-Simons v. County of Allegany*, 99 N.Y.2d 214, 220, 753 N.Y.S.2d 444, 448, 783 N.E.2d 509 (2002). But Defendant Hartman's report was not part of any such judicial act; it was merely intended as an evidentiary tool, no different from the testimony of an ordinary fact witness. Clearly, this does not establish a basis for quasi-judicial immunity; if it did, any witness who testified pursuant to a judicial subpoena would likewise be entitled to quasi-judicial immunity. It goes without saying that Defendant Hartman's other court-ordered duty -- supervising visits -- cannot possibly be described as "integral" to the "judicial process."

Moreover, no party is entitled to such immunity "if he acted outside the scope of the authority he was given by the state court." *Cruz v. Bodek*, 1997 U.S. Dist. LEXIS 1331, p. 7 (S.D.N.Y., 1997). According to Plaintiff's allegations, Defendant Hartman acted entirely "outside the scope of the authority" she was "given by the state court." She did not properly supervise the December 23 visit, as she was ordered to do; and she issued a knowingly inaccurate account of the visit, thus violating the state court's mandate for a

truthful description of what took place. Under these circumstances, Defendant Hartman cannot possibly be entitled to immunity.

Furthermore, Defendants have not cited a single case even purporting to preclude the claims for declaratory relief asserted by Plaintiff. Accordingly, even if Defendants deserved any sort of immunity in this action -- and they do not -- no immunity doctrine would shield them from any relief other than monetary damages. "[E]ntitlement to absolute immunity from a claim for damages...does not bar the granting of injunctive relief or of other equitable relief." *Shmueli v. City of New York*, 424 F.3d 231, 239 (2nd Cir., 2005); *accord, Roe v. City & County of San Francisco*, 109 F.3d 578, 586 (9th Cir., 1997) ("[A]bsolute immunity protects [defendants] only from damages claims, not from suits for prospective injunctive relief"); *Valley v. Rapides Parish School Board*, 118 F.3d 1047, 1051 n. 1 (5th Cir., 1997) ("[T]he defenses of qualified and absolute immunity do not extend to suits for injunctive relief under 42 U.S.C. § 1983"); *see also Kampfer v. Scullin*, 989 F. Supp. 194, 201 (N.D.N.Y., 1997). It follows that, to the extent Plaintiff herein seeks declaratory relief, no quasi-judicial immunity applies at all, and Defendant Hartman's arguments to the contrary either ignore or misrepresent the law.

All of this assumes that the Court treats Defendant Hartman as a state actor -- as she herself concedes she should be treated. (Hartman's Memorandum of Law, Dkt. No. 34, p. 24.) If the Court should, however, treat Defendant Hartman as a private party, she would still be liable to Plaintiff for her actions as alleged in the Amended Complaint. The conduct of a private actor may still be considered state action (and therefore subject to suit under § 1983) when the private actor "is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2nd Cir., 2002). Similarly, the Ninth Circuit Court of Appeals has explicitly held that private parties, acting together with state officials, meet the "state action" requirement of § 1983. *Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir., 1989). "Private parties act under color of state law if they willfully participate in joint action with state officials to deprive others of constitutional rights." *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir., 1989), *cert. denied*, 110 S. Ct. 51, 107 L. Ed. 2d 20 (1989), *citing Dennis v. Sparks*, 449 U.S. 24, 27, 101 S. Ct. 183, 186, 66 L. Ed. 2d 185 (1980). *See also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S. Ct. 1598, 1605, 26 L. Ed. 2d 142 (1970).

In the instant case, Plaintiff argues that all Defendants colluded in the civil rights violations asserted in the Amended Complaint. Accordingly,

Defendant Hartman is liable to Plaintiff under the theories asserted in the Amended Complaint whether or not she personally is deemed a state actor.

All of Defendants' claims of immunity must, accordingly, be rejected.

## POINT IV

### PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IS NOT SUBJECT TO DISMISSAL

Defendants offer a perfunctory objection to Plaintiff's claim for the intentional infliction of emotional distress asserted in the Amended Complaint. (ACS Defendants' Memorandum of Law, Dkt. No. 28, pp. 27-29; Hartman's Memorandum of Law, Dkt. No. 34, pp. 33-34.) Their argument hinges on the claim that this is a state court claim over which the Court should not assert "pendent jurisdiction" if the federal claims are dismissed. (ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 27; Hartman's Memorandum of Law, Dkt. No. 34, p. 33.) Since, as shown above, Plaintiff's federal claims should not be dismissed, this state law claim is not subject to dismissal either, and Defendants' argument fails.

Moreover, as Defendants concede, a claim for intentional infliction of emotional distress is appropriate for "extreme and outrageous conduct" carried out with "intent to cause, or disregard of a substantial probability of causing, severe emotional distress." (ACS Defendants' Memorandum of Law, Dkt. No. 28, p. 28; Hartman's Memorandum of Law, Dkt. No. 34, p.

34; *Mortimer v. City of New York*, 2018 U.S. Dist. LEXIS 53492, p. 79 (S.D.N.Y., 2018).) It is obvious from the Amended Complaint that Plaintiff alleges such conduct. Accordingly, her claim for intentional infliction of emotional distress is not subject to dismissal.

## CONCLUSION

Defendants bear a heavy burden with respect to the motions to dismiss. As shown above, that burden cannot be met in this case.

Plaintiff seeks only the right to litigate her claims. It is clearly in the interest of justice to allow her to present her evidence and to let a trier of fact decide the merits of the serious charges she asserts. The allegations in the Amended Complaint present a shameful picture of official misconduct. Plaintiff respectfully prays the Court to deny Defendants' motions and allow her to present her proof.

Dated: September 10, 2018

XIAMIN ZENG
Plaintiff *pro se*

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                           ) Ss.:
COUNTY OF New York  )

I, the undersigned XIAMIN ZENG , having been first duly sworn, do hereby depose and state:

I am over eighteen years old. On September 10, 2018, I caused to be served the foregoing Memorandum of Law in Opposition to Defendants' Motions To Dismiss the Amended Complaint on all Defendants herein, by depositing copies of same in depositaries of the U.S. Postal Service within the State of New York, in envelopes with first-class prepaid postage attached, addressed as follows:

Zachary W. Carter, Esq., Corporation Counsel for the City of New York
Ian William Forster, Assistant Corporation Counsel
Attorney for ACS Defendants
100 Church Street, Room 2-179
New York, New York 10007

Scott G. Christesen, Esq.
FUMUSO, KELLY, SWART, FARRELL, POLIN & CHRISTESEN, LLP
Attorneys for Defendant Kristen Hartman

110 Marcus Boulevard
Hauppauge, New York 11788

_____

[Print name: XIAMIN ZENG ]

SUBSCRIBED AND SWORN TO before me this ___10___ th day of
September, 2018.

_____
Notary Public

NICHOLAS YU
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01YU6357029
Qualified In Richmond County
Commission Expires April 10, 2021